UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEISHAWN DISMUKE,

                  Petitioner,                Case Number: 16-cv-13964
                                               Honorable Paul D. Borman

v.

JOSEPH BARRETT,

                  Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Keishawn Dismuke has filed a *pro se* petition for a writ of habeas corpus

under 28 U.S.C. § 2254.  Petitioner challenges his convictions for assault with

intent to do great bodily harm less than murder, malicious destruction of personal

property between $1,000 and $20,000, and possession of a firearm during the

commission of a felony.  At the time he filed the petition, Petitioner was in the

custody of the Michigan Department of Corrections.  He has since been

unconditionally discharged from custody.[1]  He seeks habeas corpus relief on the

_____

[1] Petitioner's discharge does not defeat § 2254's "in custody" requirement because the requirement is satisfied as long as a petitioner was incarcerated at the time a petition is filed.  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

grounds that insufficient evidence supports his conviction for assault with intent to do great bodily harm and that he received ineffective assistance of counsel.

For the reasons discussed, the Court denies the petition and denies a certificate of appealability.  The Court grants Petitioner leave to proceed *in forma pauperis* on appeal.

## I.    Background

The Michigan Court of Appeals summarized the testimony leading to Petitioner's convictions as follows:

> This case arises out of an incident that occurred on July 20, 2012, between 5:00 p.m. and 6:00 p.m.  Nathaniel Eley was working at Cold Creation, a barber shop and salon.  When Eley arrived at the salon, he parked his car in a public parking space on the street in front of Toriana's, another salon that was located two storefronts down. Defendant and his wife, Toriana Dismuke (Toriana), ran Toriana's. According to Eley, defendant was angry that Eley parked his car in front of Toriana's.  Defendant began walking back and forth from Toriana's and Cold Creation holding an assault rifle. He repeatedly demanded that Eley "move [his] f* * * * * * car."  Defendant came to the doorway of Cold Creation.  Eley told defendant that he was not moving his car and that he had parked in a public parking space. Defendant went into a nearby store, and Eley went outside.  At some point, defendant came out of the store.  Defendant continued to tell Eley to move his car.  Defendant told Eley, "If you don't move yo' car, I'm, I'ma light it up. Shoot, shoot your car up."  Eley walked to his car to get cigarettes.  He went toward the rear passenger side of the car.  Defendant continued to demand that Eley move his car and threatened to shoot it.  Toriana, who was also at the scene of the incident, yelled, "[S]hoot his young a* *."  Eley did not think defendant would shoot, and he did not intend to move his car. However, he also testified that he was afraid for his life when he saw defendant with a rifle.  While Eley was standing next to the car, defendant fired five gunshots.  According to Eley, he was standing

near the rear passenger side of the car or in between the passenger
side of the car and the rear of the car when defendant started shooting.
He also testified that he was walking back and forth between the rear
passenger door and the back of the car when defendant fired the
gunshots.  The shots all struck the rear passenger side quarter panel of
the car. Eley ran inside his shop and called the police. Then he flagged
down a Michigan State Police (MSP) vehicle that happened by.
Defendant immediately threw his rifle into a blue Dodge Durango, got
into the vehicle, and drove away. He was gone by the time the MSP
vehicle arrived.  Eley was not armed at any point during these events.

Defendant testified at trial that on the day of the shooting, Eley was
angry and threatened defendant and his family.  Defendant went into
Toriana's to avoid Eley.  He then decided to leave.  Defendant
gathered his things, including the rifle he carried for security, left the
store, and began to lock the door.  Eley then approached and had
something in his hand which he pointed at defendant.  At this time,
Eley was "about 39, 40 feet" away from defendant.  Defendant
testified that he pointed his rifle at Eley.  Defendant "got a little
annoyed," and fired at Eley's car.  Alternately, defendant testified that
he "got a little scared," partly because Eley threatened defendant's
family, so he "g[ave] out some warning shots for [Eley] to back up."
He explained that he fired the shots because he "was nervous and it
was a new gun."

*People v. Dismuke*, No. 323678, 2016 WL 299784, *1 (Mich. Ct. App. Jan. 21,

2016).

Following a bench trial in Wayne County Circuit Court, Petitioner was

convicted of assault with intent to do great bodily harm less than murder

(AWIGBH), Mich. Comp. Laws § 750.84, malicious destruction of personal

property with a value of $1,000 or more but less than $20,000, Mich. Comp. Laws

§ 750.377a(1)(b)(i), and possession of a firearm during the commission of a felony

(felony-firearm), Mich. Comp. Laws § 750.227b.  On September 2, 2014, he was

3

sentenced to three to ten years for AWIGBH, two to five years for malicious destruction of property, and two years for felony-firearm.

Petitioner filed an appeal of right arguing insufficient evidence supported his convictions, his sentence was invalid, and that his attorney was ineffective during sentencing. The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Dismuke*, No. 323678, 2016 WL 299784 (Mich. Ct. App. Jan. 21, 2016). Petitioner filed an application for leave to appeal with the Michigan Supreme Court. He raised the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Dismuke*, 499 Mich. 985 (Mich. July 26, 2016).

Petitioner then filed this petition for writ of habeas corpus seeking relief on the same grounds raised in state court. Petitioner later moved to stay the habeas corpus proceeding so that he could exhaust additional claims in state court. The Court granted the motion. *See* 5/3/2018 Memorandum and Order, ECF No. 15.[2] Petitioner filed a motion for relief from judgment raising three claims: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; and (3) prosecutorial misconduct. The trial court denied the motion. *See* 5/11/2018 Opinion and Order, *People v. Dismuke*, No. 14- 002021-01 (Dkt. 17,

---

[2] The Honorable Avern Cohn presided over this case until his retirement in 2020. The case was reassigned on January 2, 2020 pursuant to Administrative Order 20-AO-003.

Page.ID 593-96). Petitioner then filed an application for leave to appeal in the

Michigan Court of Appeals, which the court denied on October 17, 2018. See

*People v. Dismuke*, No. 345126 (Mich. Ct. App. Oct. 17, 2018).  Petitioner's

application for leave to appeal to the Michigan Supreme Court was rejected for

filing because it was untimely.  *See* 2/21/2020 Affidavit of Larry Royster (ECF No.

31-4).

Petitioner then returned to this Court and moved to reopen the petition.  The

Court granted the motion and ordered Respondent to file a supplemental answer

and Rule 5 materials.  (ECF No. 27.)  Respondent has filed the relevant state court

record and relies on the original answer to respond to the petition. (ECF Nos. 31,

32.)

The petition raises these claims:

I.     Insufficient evidence supported Petitioner's conviction of
       assault with intent to commit great bodily harm less than
       murder.

II.    Petitioner's sentence was invalid.  Petitioner received
       ineffective assistance of counsel.

## II.   Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

requires federal courts to uphold state court adjudications on the merits unless the

state court's decision (1) "was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the

United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation omitted). Under § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Habeas relief may be granted only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* A "readiness to attribute error [to a

state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

## III.  Discussion

### A.  Sufficiency of the Evidence

Petitioner first argues that constitutionally insufficient evidence was presented for a factfinder to find him guilty beyond a reasonable doubt of assault with intent to commit great bodily harm.  Under Michigan law, assault with intent to do great bodily harm less than murder requires: (1) an attempt, or threat with force or violence, to do corporal harm to another, and (2) an intent to do great bodily harm less than murder.  *Raybon v. United States*, 867 F.3d 625, 632 (6th Cir. 2017).

After reciting the controlling constitutional standard, the Michigan Court of Appeals denied the claim on the merits:

> Defendant argues that there was insufficient evidence that he attempted or threatened to injure Eley and that he intended to injure Eley because the evidence shows he only intended to shoot Eley's car. However, there was sufficient evidence that defendant attempted to injure Eley and intended to cause great bodily harm.  Eley testified that defendant shot at him five times, and the bullet holes in the car were near where Eley was standing when defendant began to shoot. Defendant also fled the scene of the incident when the MSP officer arrived.  This evidence was sufficient to show that defendant attempted to injure Eley and intended to cause great bodily harm. …
>
> Defendant correctly points out that other evidence supports the inference that he only intended to shoot Eley's car, rather than Eley. For example, there was conflicting testimony regarding whether Eley

7

was standing near where the bullets entered the car, and defendant threatened to shoot Eley's car, not Eley.  However, "[t]his Court will not interfere with the trier of fact's determinations regarding the weight of the evidence or the credibility of witnesses." *Stevens*, 306 Mich.App at 628.  Taken in the light most favorable to the prosecution, there was sufficient evidence to support the trial court's determination that defendant committed AWIGBH. …

Defendant also argues that Eley did not think defendant was shooting at him, but rather, at his car.  Although Eley testified that he was not hit with any bullets because defendant "just probably wanted to play with [him]," and was "[j]ust shooting around [him]," Eley also testified that defendant was firing the bullets at him.  Regardless, defendant does not explain how Eley's understanding of defendant's intent is legally relevant to the issue of defendant's actual intent. Instead, for the reasons discussed above, there was sufficient evidence to establish defendant's intent. ...

Defendant also points out that the judge said, while giving his verdict, "I cannot rule out a specific intent to do great bodily harm given the kind of weapon used and the fact that there were five rounds fired off."  This, defendant argues, means the judge used the wrong legal standard and did not find defendant guilty of the intent element beyond a reasonable doubt. However, the trial court also stated, "[F]rom all the facts and circumstances surrounding the shooting I can readily infer and am convinced beyond a reasonable doubt that the defendant had an intent to cause great bodily harm to [Eley]." Considering this, it is clear that the trial judge did use the correct legal standard in deciding whether defendant intended to cause great bodily harm.

*People v. Dismuke*, No. 323678, 2016 WL 299784, at *2–3 (Mich. Ct. App. Jan.

21, 2016).

The Michigan Court of Appeals' decision was not contrary to, or an

unreasonable application of, Supreme Court precedent.  On habeas corpus review,

the sufficiency of the evidence inquiry involves "two layers of deference": one to

the jury verdict, and a second to the Michigan Court of Appeals' decision. *Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017). First, the Court must ask whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in *Jackson*). Second, if the Court were "to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (emphasis in *Brown*).

Petitioner does not satisfy this two-level standard of review. Petitioner essentially asks the Court to reweigh the evidence and to come to a different conclusion than that reached by the trial court about the strength of evidence showing Petitioner's intent. This is not the Court's role on habeas review. "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326). Petitioner does not show that the state court's decision was unreasonable nor does he call into doubt any of the state court's

factual determinations. While a reasonable factfinder may have concluded that, construing the evidence presented in a light that favors Petitioner, Petitioner may have intended only to scare Eley, that is not the applicable standard. Viewing the evidence under the proper standard -- in a light most favorable to the prosecution -- the Court concludes that the evidence was sufficient to show beyond a reasonable doubt that Petitioner had the requisite intent to support the conviction.

Petitioner also notes that his wife's bench trial, which preceded his own and was presided over by the same judge, resulted in a verdict of not guilty. Assuming the verdicts could be characterized as inconsistent, Petitioner fails to state a claim for habeas relief because "inconsistent verdicts do not present a constitutional problem." *Tackett v. Trierweiler*, 956 F.3d 358, 372 (6th Cir. 2020) (citing *Harris v. Rivera*, 454 U.S. 339 (1981)). In sum, Petitioner fails to clear the "nearly insurmountable hurdle" for petitioners obtaining habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (internal citation omitted).

To the extent that Petitioner also claims that the verdict was against the great weight of the evidence, this claim is meritless. In Michigan, a trial court may order a new trial "where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v. Lemmon*, 456 Mich. 625, 642 (1998) (internal quotation omitted). The grant of a new trial under

these circumstances is distinct from the due process issues raised by insufficient evidence, and "does not implicate issues of a constitutional magnitude." *Id.* at 634 n. 8. Thus, a claim that a verdict is against the great weight of the evidence alleges an error of state law, which is not cognizable on habeas review. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (holding that "federal habeas corpus relief does not lie for errors of state law").

### B.   Ineffective Assistance of Counsel Claim

In his second claim, Petitioner asserts that defense counsel was ineffective in failing to present certain mitigating evidence at sentencing. Specifically, Petitioner argues that counsel should have presented evidence of Petitioner's community service and community support during sentencing and of his mental health history.

The Sixth Amendment right to the effective assistance of counsel extends to sentencing proceedings. *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id*. at 688. In order to establish prejudice, a petitioner must show that, but for the constitutionally

deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Id.* at 694.

The standard for obtaining habeas relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The Michigan Court of Appeals held that Petitioner failed to satisfy both *Strickland* prongs. First, the Court held that no authority supported Petitioner's argument that the failure to present evidence of mental illness or letters regarding Petitioner's good deeds fell below an objective standard of reasonableness. *Dismuke*, 2016 WL 299784 at *5. Second, the Court held that Petitioner failed to establish prejudice from counsel's omissions because, at a hearing denying Petitioner's motion for new trial, the trial judge expressly indicated that nothing Petitioner argued in his motion would have affected the sentence imposed. *Id.*

12

The Court need not address *Strickland*'s first prong because the claim is more easily resolved by addressing the prejudice prong. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). In light of the fact that the trial judge clearly stated he would have imposed the same sentence even if counsel had presented the evidence Petitioner identifies, counsel's failure to do so did not prejudice Petitioner. Petitioner is not entitled to habeas relief on this claim.

## III.   Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that the claims in the habeas petition do not warrant relief. Therefore, the Court denies a certificate of appealability.

## IV.   Conclusion

For the reasons stated above, the petition for a writ of habeas corpus is DENIED.  Further, the Court DENIES a certificate of appealability.  The Court finds Petitioner may proceed on appeal *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: August 5, 2022

14